UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua R. Donavan, | Case No. 0:17-cv-01144-PAM-KMM |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| T.G. Werlich, *Warden*, | |
| Respondent. | |

Reynaldo A. Aligada, Jr., and Robert H. Meyers, Office of the Federal Defender, 300 S. 4th Street, Ste. 107, Minneapolis, MN 55415, counsel for Petitioner

Ana H. Voss, Angela M. Munoz-Kaphing, and Ann M. Bildtsen, United States Attorney's Office, 300 S. 4th Street, Ste. 600, Minneapolis, MN 55415, counsel for Respondent

Federal district courts are empowered to grant writs of habeas corpus. 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws … of the United States." *Id.* § 2241(c)(3). Joshua R. Donavan was sentenced to a twenty-year mandatory minimum prison term after he pled guilty to conspiring to distribute Oxycodone and Methadone and distribution of Oxycodone, both of which resulted in the death of another. Mr. Donavan filed a habeas petition under § 2241, asserting that he is in custody in violation of the Constitution or laws of the United States. [Pet., ECF No. 1.] For the reasons that follow, the Court recommends that Mr. Donavan's habeas petition be granted and that his conviction and sentence be vacated.

1

I.   Background[1]

Mr. Donavan's underlying criminal case in the Central District of Illinois stems from the following set of facts:

> On July 29, 2010, when [Mr. Donavan] was twenty years old, he was charged by indictment with conspiracy to distribute oxycodone and methadone and distribution of methadone. Apparently, [Mr. Donavan] provided oxycodone to his co-defendant Logan Gaylord. Logan Gaylord then sold or otherwise provided twenty of those pills to Kelsey DeMaught. Kelsey DeMaught then sold or otherwise provided seven of those pills to Ryan Evins. Ryan Evins apparently ingested some or all of the pills along with cocaine, and he died. Because Ryan Evins died from his drug use, which involved, in part, pills that originally came from [Mr. Donavan], [he] faced a minimum of twenty years of imprisonment.
>
> Nonetheless, on August 11, 2011, [Mr. Donavan] entered a plea of guilty, and on December 9, 2011, the Court reluctantly sentenced [Mr. Donavan] to the statutory minimum of twenty years.

[ECF No. 4 at 1–2.] Mr. Donavan was sentenced pursuant to 21 U.S.C. § 841(b)(1)(C). This statute requires a minimum 20-year sentence where "death or serious bodily injury results from the use of" a controlled substance distributed by a defendant. *Id.*

Mr. Donavan's plea agreement provides that the government would have to prove beyond a reasonable doubt that "death or serious bodily injury resulted from the use of [oxycodone, a schedule II controlled substance]." [Resp't's Ex. 2 ¶ 5, ECF No. 94-2.] Mr. Donavan further admitted that he provided approximately 12 oxycodone pills to his co-defendant, Logan Gaylord, who sold them to another individual. That individual gave seven of the pills to Mr. Evins, "which he ingested causing his death." [*Id.* ¶ 26(c).] The

---

[1] The Court has previously discussed the lengthy and disquieting history of this habeas proceeding in opinions addressing whether Mr. Donavan may have the merits of his claims considered in a § 2241 proceeding. The Court will not recite that procedural history in full again here, except where relevant to the present decision.

United States District Court in the Central District of Illinois held a change of plea hearing in Mr. Donavan's case on August 11, 2011. [Resp't's Ex. 3, ECF No. 94-3.] Presenting the factual basis for the guilty plea, the Assistant United States Attorney indicated that the government would show that Gaylord sold the pills he received from Donavan, that Mr. Evins eventually received those pills from an intermediary, "and that Ryan Evins ingested those pills, causing his death." [*Id.* at 4–5.] Mr. Donavan acknowledged that he heard the facts set forth by the AUSA and agreed that those facts formed the basis of his guilty plea. [*Id.* at 6–7.]

Several years after Mr. Donavan was sentenced, the United States Supreme Court decided *Burrage v. United States*, 571 U.S. 204 (2014). Marcus Burrage had been charged under § 841(b)(1)(C) after Joshua Banka died following his use of oxycodone and heroin. The heroin in Banka's system had come from Mr. Burrage. At trial, the district court instructed the jury that the government was required to prove only that the heroin "was a contributing cause of Joshua Banka's death." *Id.* at 208. Following Mr. Burrage's conviction, he appealed, and the Eighth Circuit held that the "contributing-cause instruction was consistent with [earlier precedent]," and that "a showing of proximate cause is not required" by § 841(b)(1)(C). *Id.* The Supreme Court reversed, holding that: (1) "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt," 571 U.S. at 210; and (2) in cases where a defendant is accused of distributing a controlled substance and that drug is not an independently sufficient cause of the victim's death, the defendant cannot be liable under the penalty enhancement provision of § 841(b)(1)(C) "unless such

use is a but-for cause of the death or injury," 571 U.S. at 219. As a matter of statutory interpretation, the Court found that a showing of but-for causation was required because § 841(b)(1)(C) only requires the mandatory minimum sentence when a death "results from" the use of the substance distributed by the defendant. *Id.* at 210–19.

On May 5, 2014, a few months after *Burrage* was decided, Mr. Donavan filed this habeas petition in the Western District of Louisiana. [Pet., ECF No. 1.] The Louisiana court construed his petition as a motion to vacate a sentence pursuant to 28 U.S.C. § 2255 and transferred the case to the Central District of Illinois, where Mr. Donavan originally pled guilty and was sentenced. [ECF No. 6.] After two unfavorable decisions in the district court and two successful appeals, Mr. Donavan's case was transferred to the District of Minnesota. [ECF No. 49.] The District Court rejected the government's motion to transfer the case when Mr. Donavan was relocated by the BOP and denied the government's motion to dismiss for lack of jurisdiction. [ECF Nos. 66 and 88.] The government addressed the merits of the petition, and Mr. Donavan filed a reply. [Gov't Resp., ECF No. 93; Pet'r Reply ECF No. 98.]

II.     Discussion

The parties dispute whether Mr. Donavan's guilty plea was valid, whether he received ineffective assistance of counsel, and whether he is actually innocent of the crime with which he was charged. As explained below, the Court concludes that Mr. Donavan has demonstrated that he did not enter the guilty plea in this case knowingly. Accordingly, his guilty plea, conviction, and sentence should be vacated, and the Court does not reach the questions of ineffective assistance and actual innoncence.

### A. Validity of a Guilty Plea

"[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 467 (1969). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Among the requirements for a valid guilty plea is that the defendant understands the nature of the charges he faces. *Harvey v. United States*, 850 F.2d 388, 396 (8th Cir. 1988). "A true understanding requires a knowledge of 'the law in relation to the facts' of the case." *Id.* (quoting *Nash v. Israel*, 707 F.2d 298, 302 (7th Cir. 1983)). Such a true understanding is demonstrated when a defendant "received notice of the nature and critical elements of [the charges against him], and he expressed his understanding of the charge." *Paulson v. Black*, 728 F.2d 1164, 1167 (8th Cir. 1984); *see also United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1036–37 (8th Cir. 2010) (requiring a defendant to "receive[] real notice of the true nature of the charges against him, the first and most universally recognized requirement of due process"). A plea is "constitutionally invalid" when "neither [the defendant], nor her counsel, nor the court understood ... an essential element of [the charged offense]." *Ochoa-Gonzalez*, 598 F.3d at 1038.

### B. Donavan's Plea Was Not Made Knowingly

Mr. Donavan claims that his guilty plea was not "knowing" or "intelligent" and, therefore, constitutionally invalid, because he pled guilty without ever receiving notice of an essential element of the offense—that the government would have to prove that the oxycodone in Mr. Evins's system was the but-for cause of his death. [*See* Pet. at 7,

5

¶ 13; Pet'r's Reply at 1, 3–14.] He argues that the but-for cause standard was only understood to be an element of the offense when *Burrage* was decided after he was convicted and sentenced. [Pet. at 7 ¶ 13.] The government argues that the but-for causation standard identified in *Burrage* was nothing new at the time of Mr. Donavan's guilty plea and that his guilty plea was obtained with an understanding of this essential element of the offense. [Gov't Resp. at 15–17.] For the following reasons, the Court concludes that Mr. Donavan's plea was not made knowingly and, therefore, it was obtained in violation of his due process rights and is void.

First, the Court is not persuaded by the government's argument that *Burrage* was not a new rule in the Seventh Circuit because it had already adopted the but-for causation standard in *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010), before Mr. Donavan pled guilty in August of 2011.[2] As noted in this Court's prior opinion [ECF No. 76 at 8], the *Hatfield* court held that the "death results from" language from § 841(b)(1)(C) required a showing of but-for causation and found that the district court erred when it instructed the jury that the controlled substance distributed by the defendant had to be "a factor" or "played a part" in the victim's death. 591 F.3d at 947–51. But almost a year after *Hatfield*, the Seventh Circuit concluded that the causation

---

[2]   The government's position that *Burrage* created nothing new is directly at odds with the position it took in its original motion to dismiss in the Central District of Illinois. The government argued that the sentencing court *could not* have informed him of the "but-for" causation standard when he pled guilty because *Burrage* was not decided until "two and a half years after Donavan's guilty plea." [ECF No. 12 at 18.] The government should not be permitted in the same proceeding to ask that Mr. Donavan's petition be dismissed because *Burrage* was so new that notice of the elements it recognized was impossible and subsequently to argue that Donavan is not entitled to any relief because *Burrage* changed nothing.

question posed by § 841(b)(1)(C)'s death-results language was not actually an element of the offense which the government was required to prove beyond a reasonable doubt. *United States v. Krieger* ("*Krieger I*"), 628 F.3d 857, 867 (7th Cir. 2010). Instead, the court found it was a sentencing factor that could be found by the sentencing judge applying a preponderance of the evidence standard. *Id.* As noted, *Burrage* later reached the opposite conclusion, invalidating both *Krieger* and *Hatfield*. 571 U.S. at 210 ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt"). Since *Burrage* was decided, the Seventh Circuit has made clear that *Hatfield* did not, in fact, establish but-for causation as an element. *See Krieger v. United States* ("*Krieger II*"), 842 F.3d 490, 505 (7th Cir. 2016) (finding that despite the *Hatfield* decision, the but-for standard announced in *Burrage* was new law). In other words, the government's position overstates the degree to which Seventh Circuit law established, prior to *Burrage*, that but-for causation was an essential element of the death-results charge under § 841(b)(1)(C).

Second, even were but-for causation a clearly required element at the time of Mr. Donavan's plea, the Court is not persuaded that the plea agreement and the plea colloquy show Mr. Donavan was informed of that essential element. The government suggests that the use of the terms "resulted from" and "cause" in the plea agreement and during the plea colloquy shows that Mr. Donavan understood the critical element of but-for causation. [Gov't Resp. at 15–17.] However, such references to the broad concept of causation and the "results from" language in § 841(b)(1)(C) did not adequately inform Mr. Donavan that the government would have to establish the legal

7

concept of but-for causation beyond a reasonable doubt. Despite their inclusion of the "resulted from" language and the mention of "cause," neither the plea agreement nor the plea colloquy ever specifically state that the government would be required to show that the oxycodone in Mr. Evins's system was the "but-for cause" of his death. In that respect, Mr. Donavan clearly did not "explicitly and repeatedly acknowledge[] that his conduct satisfied the 'but-for' standard" when he pled guilty. [Gov'ts Resp. at 17.]

The government essentially equates "results from" and "cause" with but-for causation where no equivalence exists. Causation embodies a broader array of concepts than those contemplated by a "but-for" causation standard. A "but-for cause" is "[t]he cause without which the event could not have occurred." *Cause*, Black's Law Dictionary (10th ed. 2014). But the cause of an event also includes "[a] factor that ... plays a part in producing a result," and "[a] cause that does not necessarily or immediately produce an event or injury...." *Id.* (definitions for "contributing cause" and "remote cause," respectively). And were the government's reading the correct one, it is unlikely that the Supreme Court would have felt the need to issue the *Burrage* decision in the first place.

Finally, the Court's conclusion that Mr. Donavan's guilty plea was not knowingly or intelligently made is supported by existing precedent. The relevant circumstances here are like those in *Ochoa-Gonzalez*. Ms. Ochoa-Gonzalez pled guilty to one count of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), and at the plea hearing, she admitted only that she learned a fake number on her passport belonged to a real person during discovery. 598 F.3d at 1036. On appeal, she argued that her guilty plea should be vacated because it was not intelligent, asserting that a subsequent Supreme Court decision had interpreted § 1028A(a)(1) to require the government to prove that the

8

defendant knew "that the identity stolen belongs to a real person." *Id.* (citing *Flores-Figueroa v. United States*, 556 U.S. 646 (2009)). The colloquy at the hearing demonstrated that "neither Ochoa-Gonzalez, nor her counsel, nor the court understood that her knowledge that the [passport stamp] number belonged to another person was an essential element of aggravated identity theft under ... § 1028A(a)(1)." *Id.* at 1038. As a result, her plea was not the product of an intelligent, informed choice and was "constitutionally invalid." *Id.*

Similarly, here, despite the references to broad concepts of causation in the plea agreement and at the plea hearing, the record indicates that Mr. Donavan never received notice of an essential element—"but-for causation"—of the death-results charge under 21 U.S.C. § 841(b)(1)(C). Mr. Donavan pled guilty without that notice, a subsequent Supreme Court decision interpreted the statute to require proof of the missing element, and Mr. Donavan claims, as a result, that his guilty plea was not the product of an intelligent, informed choice. The same result in *Ochoa-Gonzalez*—a conclusion that Mr. Donavan's guilty plea is constitutionally invalid—should follow.

### C. *Brady v. United States*

Citing *Brady v. United States*, 397 U.S. 742 (1970), the government argues that regardless of how the decision in *Burrage* is characterized, Mr. Donavan's plea was still knowing and voluntary because subsequent changes in the law do not necessarily invalidate a guilty plea. [*See* Gov't Resp. at 17-18.] However, *Brady* does not change the Court's conclusion that Mr. Donavan's guilty plea is constitutionally invalid. In *Brady*, after learning that his codefendant had reached a plea deal and could testify against him, Robert Brady pled guilty to kidnapping in violation of 18 U.S.C. § 1201(a).

9

397 U.S. at 743–44. The statute carried with it the possibility of a death sentence or up to life in prison if the death penalty was not recommended. *Id.* at 743 n.1. Several years later, Mr. Brady filed a § 2255 motion, which was denied by the district court and the Tenth Circuit Court of Appeals. *Id.* at 744–45. After the Tenth Circuit's affirmed the denial of Mr. Brady's § 2255 motion, the Supreme Court decided *United States v. Jackson*, 390 U.S. 570 (1968), which held that the kidnapping statute was "unconstitutional because it permitted imposition of the death sentence only upon a jury's recommendation and thereby made the risk of death the price of a jury trial," thereby unconstitutionally deterring a defendant from exercising his constitutional rights to plead not guilty and to receive a jury trial. *Brady*, 397 U.S. at 745–46.

Mr. Brady argued that *Jackson* required his guilty plea be invalidated because it was essentially coerced by the portion of § 1201(a) that was deemed unconstitutional, but the Supreme Court disagreed. *Brady*, 397 U.S. at 746–47 ("The Court made it clear in *Jackson* that it was not holding § 1201(a) inherently coercive of guilty pleas: 'the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily.'"). In discussing Mr. Brady's contention that his plea was unintelligent because nine years after he pled guilty, *Johnson* invalidated a portion of the statute, the Supreme Court explained

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attach if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended to quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other

10

> impermissible conduct by state agents ..., a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

*Brady*, 397 U.S. at 757.

*Brady* is instructive, but clearly distinguishable. Unlike the situation here, in *Brady* the Supreme Court specifically found that Mr. Brady's plea was intelligently made because "[h]e was advised by competent counsel, [and] he was made aware of the charge against him[.]" *Id.* at 756. Brady received constitutionally adequate notice of the nature of the charge against him because the later judicial decision at issue did not more narrowly interpret the scope of conduct criminalized by the statute he was charged with violating, instead only altering the sentence he could have received absent his plea. Nothing changed about the essential elements the government would have been required to prove to convict him of the charge. The same cannot be said of the effect of *Burrage* on Mr. Donavan's earlier guilty plea. *Burrage* defines what the death-results language in 21 U.S.C. § 841(b)(1)(C) has meant since Congress enacted the law, not just what it has meant since the Supreme Court decided *Burrage*.[3] Thus, even when read with *Brady* in mind, Mr. Donavan's claim is not one that can be said to have involved a "plea of guilty intelligently made in light of the then applicable law...." *Brady*, 397 U.S. at 757.

---

[3] *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.").

11

For these reasons, Mr. Donavan's guilty plea is not constitutionally valid, his petition should be granted, and his conviction and sentence should be vacated.

III.    Remaining Claims

Mr. Donavan also claims that he is actually innocent of distributing drugs resulting in the death of another and that his conviction should be reversed because he received ineffective assistance of counsel. [Pet'r's Reply at 14–19.] The Court need not reach these issues because it concludes that his guilty plea must be vacated as constitutionally invalid. Nevertheless, the Court makes the following observations concerning these issues.

First, with respect to Mr. Donavan's actual-innocence claim, the Court notes that the government has attempted to "buttress the record … with additional material that commemorates Donavan's guilt," arguing that facts adduced during his co-defendant's § 2255 proceedings demonstrate that oxycodone was the but-for cause of Mr. Evins's death. [Gov't Mem. at 19–21.] Mr. Donavan was not a participant in any of the post-conviction proceedings that involved his co-defendant. As a result, he has never had an opportunity to contest any portion of the factual record that the government relies upon in its response. If the consideration of the merits of Mr. Donavan's actual-innocence claim becomes necessary to resolve this litigation, any reliance on a factual showing he has not had a chance to rebut or cross-examine would raise serious due process concerns.

Second, though Mr. Donavan does discuss the performance of his trial counsel in connection with his guilty plea in a declaration attached to his *pro se* petition [ECF No. 1-2 at 20], the government did not address any issue with ineffective assistance of

12

counsel in its response to the merits of the petition. [Gov't Mem., ECF No. 93.] Mr. Donavan discusses his trial counsel's performance in his reply [Pet'r's Reply at 16–17], which leads the Court to highlight a troubling aspect of these proceedings. In the Central District of Illinois, following the Seventh Circuit's first remand, the district court made the following determination:

> Contrary to any suggestion by Donavan, neither counsel nor the Court could have advised him regarding the "but-for" cause of death language set forth in *Burrage* at the time of his plea colloquy, as that case would not be decided for more than two years after the entry of his plea.

[ECF No. 36 at 16.] If it were true, as the government has argued, that *Hatfield* established that but-for causation was an element of the death-results offense before Mr. Donavan's plea, then constitutionally effective assistance of counsel in connection with the guilty plea would have required his attorney to advise him of the same. There is nothing in the record to suggest that ever happened here or that Mr. Donavan would have pled guilty if he had been properly advised regarding the government's burden. *See Hawkman v. Parratt*, 661 F.2d 1161, 1170–71 (8th Cir. 1981) (upholding district court's habeas relief under 28 U.S.C. § 2254 where "the record is unclear as to whether the petitioner's attorney ever discussed with petitioner the elements of each of the crimes charged and the proof required of the state to convict the petitioner on each of the charges"); *United States v. Naim*, No. CR02-4078MWB, 2005 WL 850840, at *10–13 (N.D. Iowa Apr. 12, 2005) (granting the defendant's 28 U.S.C. § 2255 application to vacate his sentence following a guilty plea to possession of firearms in furtherance of a drug-trafficking crime where trial counsel's performance was deficient for failing to correctly advise him regarding the elements of the offense, which was prejudicial

because correct advice would have explained the government faced a more stringent standard in proving its case). Based on this reality, Mr. Donavan's ineffective assistance of counsel claim, first raised in May of 2014, and opposed by the government using an argument that directly contradicts the position they now adopt, should have been granted several years ago.

In the event the District Court is inclined not to adopt the recommendation that the petition be granted because the guilty plea is constitutionally invalid, the Court would alternatively recommend that the petition be construed as setting forth the ineffective-assistance-of-counsel claim described in Mr. Donavan's reply memorandum and that an evidentiary hearing be held to address the claim.

## IV. Recommendation

For the reasons set forth above, **IT IS HEREBY RECOMMENDED THAT** Mr. Donavan's petition **[ECF No. 1]** be **GRANTED**, and that his guilty plea be **VACATED**.

Date: August 6, 2019                              *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.